**Jerry BAKER, Plaintiff,**

v.

**AMERICAN JUICE, INC., Defendant.**

**No. 2:93cv262 JM.**

United States District Court,
N.D. Indiana,
Hammond Division.

July 6, 1994.

James R. Oates, Merrillville, IN, for plaintiff.

Robert J. Dignam, Merrillville, IN, Joseph Beckman, Steven H. Adelman and Michael Green, Chicago, IL, for defendant.

### *ORDER*

MOODY, District Judge.

This is a lawsuit that, from the record before the court, should never have been brought. Jerry Baker's lawyer should have known better. Perhaps he did. At any rate, on April 8, 1994, American Juice, Inc. moved for summary judgment. *See* FED.R.CIV.P. 56. To this date, Baker has not responded to that motion. American Juice's motion is hereby **GRANTED.** American Juice's mo-

tion for attorneys' fees is also **GRANTED.** *See* 28 U.S.C. § 1927.

## I.

██ "[S]ummary judgment is appropriate—in fact, is mandated—where there are *no disputed issues of material fact and the movant must prevail as a matter of law.*" *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir.1994). A non-moving party may not rest on its pleadings to defeat summary judgment. *See* FED. R.CIV.P. 56(c). Accordingly, where a party fails to oppose a summary judgment motion

the court will assume that the fact[s] as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy.

LOCAL RULE 56.1. The Seventh Circuit recently "endorsed the exacting obligation" this rule imposes on non-moving parties. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921 (7th Cir.1994). The appeals court acknowledged that "district courts are not obliged in our adversary system to scour the record looking for factual disputes." *Id.* at 922. This court will not "scour the record" on Baker's behalf: the court accepts as undisputed American Juice's well-supported factual allegations.

## II.

American Juice is a privately owned and operated corporation. Baker worked for American Juice in its Gary, Indiana plant from May, 1988 until June, 1992. Baker Dep. at 25–26; Sherwood Aff. ¶ 2. From September, 1989 until June, 1992, Baker was employed as a "filler operator," a management position not covered by any union contract. Baker Dep. at 25–26.

Baker was not an ideal employee. American Juice has produced more than 17 notifications of disciplinary violations and absenteeism by Baker during his tenure with the company. Baker Dep.Exs. 1–17. American Juice's "Employee Handbook" indicates that there are four levels of rules violation within the company. For a Group I violation, the least serious of these, an employee may be discharged after the fourth infraction. Emp. Handbook at 2. For a Group IV violation,

the most serious level of violation, discharge may occur at the first infraction. Emp. Handbook at 2. Most of Baker's violations were for lesser infractions. However, in January, 1992 Baker violated the Group IV rule against disobeying a supervisor. Sherwood Aff. ¶ 4. Rather than fire Baker for that infraction, as the employee handbook provided for, American Juice suspended Baker for three days. Sherwood Aff. ¶ 4. American Juice was not so patient with Baker when, in June, 1992, he again violated the same Group IV rule by thrice refusing to start up a machine that his supervisor asked him to start. *See* Sherwood Aff. ¶ 4; Baker Dep. at 88. The company had had enough and— "based on [the write-up of the latest incident] and Baker's entire work record"—Baker was fired. *See* Sherwood Aff. ¶ 4.

Baker, who is African–American, then filed charges of discrimination with the United States Equal Employment Opportunity Commission ["EEOC"], ultimately receiving a right-to-sue letter from that agency. Complaint ¶ 6. Baker sued American Juice in state court; American Juice removed the action here. *See Baker v. American Juice,* No. 93–262, slip. op. at 1–2 (N.D.Ind. Dec. 17, 1993) (denying motion to remand).

## III.

Baker's complaint is somewhat disjointed, and implicates numerous legal theories. The complaint suggests violations of the United States and Indiana constitutions, breach of contract, retaliatory discharge, breach of contract, and violations of the federal civil rights laws. American Juice convincingly argues that no triable issue exists under any of these legal theories. Baker, as noted, has not argued otherwise. The court takes up Baker's legal theories in turn.

### A. *Constitutional violations.*

██ Baker's complaint alleges "the deprivation of rights guaranteed to [Baker] by the United States Constitution" and "the Constitution of the State of Indiana." Baker has no cause of action against a private entity under either the state or federal constitution. This is a matter of horn-book law. Even

passing research on the part of Baker's counsel would have revealed that there was no basis for asserting these legal bases for relief.

With regard to Baker's federal constitutional argument, the Supreme Court made clear long ago that the U.S. Constitution—and specifically the Fourteenth Amendment—"erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Perhaps this basic constitutional premise led to Baker's blank answer to American Juice's interrogatory—filed in support of summary judgment—that asked Baker to "identify the rights under the United States Constitution ... [that] were violated by Defendant."

Baker did respond to American Juice's interrogatory *vis-a-vis* his state constitutional claim. Baker claimed, as he did in his complaint, Complaint ¶ 1, that he was discriminated against by American Juice and that this discrimination violated his liberty interests under Article I of the Indiana Constitution. The Indiana Constitution is no different than the federal constitution, however, in what it defends: *i.e.,* the rights of Indiana's citizens against the governing power of the state. *See Lambert v. State Dept. of Highways,* 468 N.E.2d 1384, 1387 (Ind.Ct. App.1984) (holding that when the state acts in a proprietary, rather than governing, capacity, that constitutional limitations do not apply); *see also Collins v. Day,* 604 N.E.2d 647, 650–51 (Ind.Ct.App.1992) (citing Indiana cases that hold there are no practical differences between the equal protection guaranteed under the state versus the federal constitution). Baker, as noted, has not responded to American Juice's arguments, but the court's own research reveals not one reported Indiana case in which a plaintiff brought a claim of private discrimination under the Indiana Constitution.

American Juice is, as a matter of clear law, entitled to judgment on Baker's constitutional claims.

### B. *Breach of contract.*

Baker alleges that "the defendant refused to honor the basic premises of fair dealing and non-discrimination in contracting for the plaintiff's employment in the context of an employee at will and pursuant to the contract between the employer and the employee." Complaint ¶ 3. Giving Baker the benefit of the doubt, this allegation could be construed to allege a breach of contract related to Baker's discharge or a breach relating to his treatment while on the job. In either case, the allegation is frivolous.

■■■ Baker has no basis for a breach of contract claim arising from his termination. Subsequent to his September, 1989 promotion, Baker was an at-will employee. *See* Baker Dep. at 8–9 (union contract no longer applied subsequent to promotion); *see also* Complaint ¶ 3 (alleging that Baker's relationship with American Juice was "in the context of an employee at will"). An employee-at-will "may be discharged for virtually any reason at any time." *Tacket v. Delco Remy,* 959 F.2d 650, 653 (7th Cir.1992) (construing Indiana law). Baker's disciplinary record provides more than adequate justification for the termination of his at-will employment.

■■■ Baker's at-will status also undercuts any allegation of breach of contract based on an implied covenant of fair, or nondiscriminatory, dealing. Indiana implies no such covenants in an at-will employment context. *See Mehling v. Dubois County Farm Bureau Cooperative Ass'n,* 601 N.E.2d 5, 9 (Ind.Ct.App.1992); *Hamblen v. Danners, Inc.,* 478 N.E.2d 926, 929 (Ind.Ct.App.1985).

Accordingly, on this theory, too, American Juice is entitled to judgment as a matter of law.

### C. *Retaliatory discharge.*

■■■ Baker also alleges that American Juice "retaliated against [Baker] at various and sundry times" when "from January, 1992 to the present and continuing, [Baker] attempted to exercise his protected and contractual rights to complain and grieve the action taken against his [*sic*]." Complaint ¶ 4. It is true that even an at-will employee "cannot be discharged solely for exercising a statutorily conferred right." *See Tacket,* 959 F.2d at 653 (construing Indiana law). How-

ever, there is no evidence that Baker exercised any statutorily provided for grievance procedure prior to his termination. *See* Sherwood Aff. ¶ 7 ("I am not aware of any complaints made by Jerry Baker to the Unemployment Board of Indiana, the EEOC, or other governmental bodies, until after Baker had been terminated.") It is temporally impossible that Baker's termination was in retaliation for the EEOC charge lodged subsequent to that termination.

In this factual context, Baker's allegation of retaliatory discharge is frivolous and American Juice is entitled to judgment as a matter of law on this allegation.

### D. *The Civil Rights Act.*

The meat of Baker's complaint comes in his allegation that "the defendant intentionally isolated [*sic*] the laws against discrimination." Complaint ¶ 5. The complaint cites two specific substantive sections of the Civil Rights Act in support of this allegation. See 42 U.S.C. §§ 1985 & 1981. Based on the undisputed record now before the court, summary judgment is mandated on these claims, too.

### 1. *42 U.S.C. § 1985.*

Baker's reliance on § 1985 is clearly misplaced. Section 1985 provides a cause of action for "conspiracy to interfere with civil rights." The only actors implicated by Baker's complaint, however, are American Juice and its employees. Intracorporate discussions, and actions, cannot form the basis of a "conspiracy" within the meaning of § 1985. *See Travis v. Gary Community Mental Health Center,* 921 F.2d 108, 110–11 (7th Cir.1990). Baker's case falls squarely outside § 1985's reach. American Juice is, therefore, entitled to judgment as a matter of law on that theory.

### 2. *42 U.S.C. § 1981.*

Baker's reliance on § 1981 is more substantive. Section 1981 assures nonwhite U.S. citizens the same rights to "make and enforce contracts ... as is enjoyed by white citizens." The statute defines "make and enforce contracts" as "includ[ing] the making, performance, modification, and ter-

mination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although at-will employees do not have all the rights of employees who work under fixed-term employment contracts, "[e]mployment at will is not a state of nature" and at-will employees may bring claims under § 1981. *See McKnight v. General Motors Corp.,* 908 F.2d 104, 109 (7th Cir.1990). Baker's allegations that American Juice refused him promotion opportunities it gave his white co-workers, applied its disciplinary rules differently to him than to its white employees, and fired him wrongfully and on the basis of his race do implicate § 1981. Baker also arguably states a claim under Title VII on this basis. *See* 42 U.S.C. § 2000e–2 ("Unlawful employment practices").

In cases involving alleged discrimination under Title VII and § 1981, a plaintiff may prove discrimination by indirect evidence according to the formula set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973). *See Pilditch v. Board of Education,* 3 F.3d 1113, 1116 (7th Cir.1993). Under this formula, once the plaintiff makes out a *prima facie* case of discrimination, the defendant must articulate a legitimate reason to rebut the presumption of discrimination that otherwise arises. *Id.* Plaintiff may then attempt to prove that reason is pretextual. *Id.* To make out a *prima facie* case here, Baker would have to prove that he was meeting American Juice's legitimate expectations, was in fact not promoted and/or fired, and that American Juice promoted others in his position and/or replaced him with others of a different race. *See id.*

Baker has not made even a good faith effort to carry this initial burden. Although there is no dispute that Baker was fired, American Juice has disputed—and supported its objections with regard to—the other requirements for a *prima facie* case. Baker's own deposition testimony was that he never sought a promotion and that he was satisfied in the position he held. Baker Dep. at 114. Baker testified that nobody at Amer-

ican Juice ever harassed him because of his race. Baker Dep. at 114. He said that he had never heard anybody in American Juice's management make racial comments against African–Americans. Baker Dep. at 117. By contrast, American Juice's submission of Baker's numerous disciplinary violations establish that Baker was not meeting American Juice's legitimate expectations. Baker's complaint's bare allegation of discriminatory treatment is insufficient: it was Baker's duty to come up with evidence of a discriminatory employment decision. *See Kizer v. Children's Learning Center,* 962 F.2d 608, 612 (7th Cir.1992). He did not do so. Accordingly, American Juice is entitled to judgment as a matter of law on this final claim as well.[1]

## IV.

 American Juice has also moved for attorneys' fees under 28 U.S.C. § 1927. Section 1927 provides that

> [a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This case presents a clear case for § 1927's application. American Juice's motion to dismiss pointed out the legal frivolity of all but Baker's § 1981 claim and the record as presented indicates that there was no factual basis for that claim. Baker's attorney, James R. Oates, either did not bother to conduct the research required to make this determination or else did not conduct his research in an objectively reasonable manner. The precise nature of Oates failure is difficult to ascertain because of his failure to file a response on Baker's behalf to American

Juice's motion for summary judgment. At any rate, the law requires attorneys practicing in the federal courts to "ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief." *In re TCI Ltd.,* 769 F.2d 441, 446 (7th Cir.1985). As the Seventh Circuit has observed, "[i]t would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response." *Id.* That is precisely what Oates did in this case. This sort of practice will not be tolerated by this court. Oates, not American Juice (or Baker), must bear the resulting costs.

## V.

In conclusion, American Juice's motion for summary judgment is **GRANTED** in whole. The clerk is **ORDERED** to enter final judgment reading as follows:

> Summary judgment is GRANTED American Juice: Jerry Baker shall take nothing by his complaint.

American Juice's motion for attorneys' fees is also **GRANTED.** Oates is **ORDERED** to pay American Juice's attorneys' fees incurred in preparing its motion for summary judgment. American Juice has until July 19, 1994 to file an affidavit of costs setting out those fees. Oates may file any objections to American Juice's affidavit of costs up until August 2, 1994. The court will then set the precise figure owed.

**SO ORDERED.**

---

1. Although the record here mandates summary judgment, the court takes this opportunity to clarify that the Supreme Court *has not,* as American Juice states, "made it clear that summary judgment is a favored means of resolving discrimination cases." Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 6. Neither case American Juice cites in support of its conclusion in this regard even involved discrimination claims. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 245, 106 S.Ct. 2505, 2508–2509, 91 L.Ed.2d 202 (1986) (libel action); *Celotex Corp. v. Catrett,* 477 U.S.

317, 319, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986) (wrongful death). Moreover, in discrimination cases, where issues of intent and credibility are often at issue, the Seventh Circuit has warned district courts to look with particular scrutiny before granting summary judgment. *See Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). Accordingly, in the normal situation, where the non-movant files a response, disposition of a discrimination case on summary judgment is more difficult than disposition of other sorts of cases at that stage—it is hardly "favored."