**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES H. SPRIGGS,
<u>Plaintiff-Appellant,</u>

v.

DIAMOND AUTO GLASS; RICHARD A.
RUTTA; ERNEST STICKELL,

No. 97-2575

<u>Defendants-Appellees.</u>

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW; NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE,
<u>Amici Curiae.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Frederic N. Smalkin, District Judge.
(CA-97-1449-S)

Argued: December 2, 1998

Decided: January 28, 1999

Before HAMILTON, LUTTIG, and KING, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge King wrote the
opinion, in which Judge Hamilton and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Alex Tanas Sliheet, Rockville, Maryland, for Appellant.
Richard Talbot Seymour, LAWYERS' COMMITTEE FOR CIVIL

RIGHTS UNDER LAW, Washington, D.C., for Amici Curiae. Angus Robert Everton, MASON, KETTERMAN & MORGAN, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Vickie I. Fang, Herbert Alan Dubin, Rockville, Maryland, for Appellant. Barbara J. Arnwine, Thomas J. Henderson, Teresa A. Ferrante, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C.; Dennis C. Hayes, General Counsel, Willie Abrams, Assistant General Counsel, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Baltimore, Maryland; Professor Christine Cooper, LOYOLA UNIVERSITY SCHOOL OF LAW, Chicago, Illinois, for Amici Curiae.

_____

## OPINION

KING, Circuit Judge:

James Spriggs appeals the district court's dismissal of his complaint, filed pursuant to 42 U.S.C. § 1981, which alleged racial harassment and retaliation in connection with his at-will employment relationship with Diamond Auto Glass ("Diamond"). Because this relationship was contractual and thus protected by § 1981, the district court erred in dismissing Spriggs's suit under Rule 12(b)(6), and we reverse.

I.

Diamond sells and installs automobile glass from several stores in Maryland, including one in Forrestville. In July 1993, Spriggs, who is an African-American, went to work for Diamond as a customer service representative at its Forrestville store.[1] Throughout the term of Spriggs's employment, Richard Rutta was Diamond's president, and Ernest Stickell served as Spriggs's supervisor. Both Rutta and Stickell are white.

_____

[1] The facts are taken from Spriggs's complaint, which, for purposes of this appeal, we must accept as true. DeSole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991).

2

Spriggs never entered into a written employment agreement with Diamond. He also does not claim that Diamond promised him, orally or in writing, any specific duration of employment or that he ever received any employee handbook regarding Diamond's employment policies.

Between July 1993 and August 1995, Stickell repeatedly used racial slurs that are particularly offensive to African-Americans, often in Spriggs's presence. On several occasions, Stickell addressed these epithets to Spriggs himself.[2] As a result of Stickell's actions, and the failure of Diamond's management to stop them, Spriggs quit his job at Diamond in August of 1995.

Approximately one year later, a manager at the Forrestville store telephoned Spriggs and asked him to return to work for Diamond. The manager assured Spriggs that he would do his best to control Stickell. Nevertheless, after Spriggs returned in September of 1996, Stickell's racist comments and actions continued, and Spriggs again left Diamond on February 6, 1997.

At the end of that month, one of Diamond's managers wrote to Spriggs asking him to return to work and again assured him that Stickell would be kept in check. Spriggs returned to work on March 10, 1997. But when Spriggs arrived, Stickell immediately presented him with a list of new job duties, which Spriggs considered unreasonable and racially motivated. Because of this incident and because he believed that Stickell would continue to racially harass him, Spriggs permanently left Diamond shortly thereafter.

Spriggs then filed this suit, alleging that Diamond, Rutta, and Stickell had subjected him to severe racial harassment amounting to "forced termination" of his employment with Diamond. This termination, Spriggs claims, violated 42 U.S.C. § 1981.

_____

[2] Stickell's alleged harassing acts are legion. For example, Spriggs claims that Stickell referred to him as a "dumb monkey" and a "nigger." J.A. 9. For purposes of this opinion, we will assume that these and the other racially-charged actions of which Spriggs complains were sufficient to support an otherwise valid claim under § 1981. Accordingly, we will not further describe the alleged discriminatory conduct.

The defendants responded by jointly moving to dismiss Spriggs's complaint for failure to state a cause of action. See Fed. R. Civ. P. 12(b)(6). In granting this motion, the district court first determined that Spriggs had been an at-will employee under Maryland law. The court then reasoned that because at-will contracts "confer no rights that are enforceable in an action ex contractu , . . . [they] cannot serve as the predicate for a Section 1981 action." J.A. 26.

Spriggs appeals the district court's dismissal of his § 1981 claim.

II.

Spriggs argues that his at-will employment relationship with Diamond was a contract and that, by racially harassing him so severely as to force him to terminate that contract, the defendants violated § 1981. Having reviewed the district court's dismissal order de novo, Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), we agree with Spriggs; as a result, we reverse the district court's dismissal of Spriggs's claim.

A.

Section 1981 guarantees to all persons in the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In 1989, the Supreme Court construed the "make and enforce" language of § 1981 narrowly, holding that the statute did not prohibit discriminatory conduct that occurred after the "making" of a contract and that did not interfere with the plaintiff's "enforcement" of his or her contractual rights. Patterson v. McLean Credit Union, 491 U.S. 164 (1989). Congress responded to Patterson by passing the Civil Rights Act of 1991 (the "1991 Act"). The 1991 Act amended § 1981 by adding, inter alia, a new, broad definition of "make and enforce contracts":

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

4

42 U.S.C. § 1981(b).**3**

A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b). See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982) (Section 1981 "can be violated only by purposeful discrimination"). Consequently, the initial question in this case is whether Spriggs's complaint alleges facts that, if true, demonstrate that he entered into a contract with Diamond. We hold that it does.

When Spriggs began work for Diamond in 1993--and upon returning to work in both 1996 and 1997--he accepted Diamond's offer to enter into a contract. That is, Diamond had offered, either expressly or implicitly, to pay Spriggs if he would perform the duties of customer service representative, and Spriggs accepted that offer by beginning work. Spriggs's performance of the assigned job duties was consideration exchanged for Diamond's promise to pay. The parties' actions thus created a contractual relationship. See Williams v. United Dairy Farmers, 20 F. Supp. 2d 1193, 1202 (S.D. Ohio 1998) (contract created when plaintiffs were "offered employment, accepted that offer, and gave consideration via their labor").

_____

**3** Section 1981 now provides in full as follows:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

5

Because the parties did not agree on a set duration for Spriggs's employment, Maryland law permitted either party to terminate the contract at will. <u>Adler v. American Std. Corp.</u>, 432 A.2d 464, 467 (Md. 1981). Nevertheless, the lack of an agreed-upon duration does not invalidate the underlying contract itself. <u>See</u> Restatement (Second) of Contracts § 33 cmt. d, illus. 6 (1981) (accepted offer of employment, though of indefinite duration, may create at-will employment agreement). Indeed, Maryland courts recognize that at-will employment relationships are contracts: "In Maryland, <u>at-will employment is a contract</u> of indefinite duration that can be terminated at the pleasure of either party at any time." <u>Hrehorovich v. Harbor Hosp. Ctr., Inc.</u>, 614 A.2d 1021, 1030 (Md. Ct. Spec. App. 1992) (emphasis added).**4** Therefore, Spriggs's employment relationship with Diamond, though terminable at will, was contractual. <u>See McKnight v. General Motors Corp.</u>, 908 F.2d 104, 109 (7th Cir. 1990) ("Employment at will is not a state of nature but a continuing contractual relation.").**5**

We have seen no indication that, when drafting the original § 1981 or the amending 1991 Act, Congress intended the term "contract" to have any meaning other than its ordinary one. <u>See Lane v. Ogden Entertainment, Inc.</u>, 13 F. Supp. 2d 1261, 1272 (M.D. Ala. 1998) ("`Contract' is used in § 1981 in its basic legal meaning . . . ."). Having concluded that an at-will employment relationship is contractual, we hold that such relationships may therefore serve as predicate contracts for § 1981 claims.

In so doing, we agree with the Fifth Circuit's recent decision in <u>Fadeyi v. Planned Parenthood Ass'n</u>, 160 F.3d 1048, 1052 (5th Cir. 1998).**6** In that case, the Fifth Circuit began by confirming that an at-

---

**4** **<u>Accord Suburban Hosp., Inc. v. Dwiggins</u>**, 596 A.2d 1069 (Md. 1991); <u>Adler</u>, 432 A.2d at 467.

**5** While the Seventh Circuit recently questioned <u>McKnight</u>, it did so in dicta and did not expressly overrule that case. <u>See Gonzales v. Ingersoll Milling Mach. Co.</u>, 133 F.3d 1025, 1035 (7th Cir. 1998). Further, Chief Judge Posner's analysis of the basic at-will employment relationship is persuasive, whether or not <u>McKnight</u>'s ultimate holding remains good law.

**6** **<u>Accord</u>**, <u>Williams</u>, 20 F. Supp. 2d at 1202; <u>Lane</u>, 13 F. Supp. 2d at 1272; <u>Larmore v. RCP/JAS, Inc.</u>, 1998 WL 372647, *2 (E.D. Pa. May

6

will employee working in Texas had a contractual relationship with her employer under Texas law. Id. at 1050 (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989)). After reviewing Patterson and the text and legislative history of the 1991 Act, the court concluded that § 1981's protection extends to at-will employees: "Congress could not have meant to exclude at-will workers from the reach of § 1981 . . . ." Fadeyi, 160 F.3d at 1052. As a result, the Fifth Circuit reinstated an at-will employee's § 1981 claim that had been dismissed because, in the district court's view, it was not based on a "contract." Id. at 1048. Our decision here is thus consistent with the Fifth Circuit's holding in Fadeyi, the only Court of Appeals decision to have squarely resolved this issue.

The district court, of course, reached a different conclusion. In holding that an at-will employment contract could not serve as a predicate for a § 1981 claim, the district court relied on our decision in Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231 (4th Cir. 1991). In Conkwright, we found that, under Maryland law, the terms of an employee manual had not become part of the plaintiff's employment contract. As a result, he was purely an at-will employee. Consequently, we held that the plaintiff "ha[d] no claim based on breach of an implied employment at-will contract" when he was terminated in a way that arguably contradicted the employee manual. Id. at 240 (emphasis added).

The district court, however, relied on Conkwright for the proposition that "an at-will employment `contract' is, because of its lack of substance, unenforceable in an action ex contractu." J.A. 26. The district court simply misapplied Conkwright. While we did hold that the plaintiff could not sue for breach of an at-will employment contract simply because his contract was terminated, we did not hold that contracts terminable at will do not create enforceable contract rights. They do. For example, at-will employees certainly may sue their employers for failure to pay wages or provide other agreed-upon benefits. E.g., Lane, 13 F. Supp. 2d at 1272.

_____

19, 1998); Baker v. American Juice, Inc., 870 F. Supp. 878, 883 (N.D. Ind. 1994); Harris v. New York Times, 1993 WL 42773, *4 (S.D.N.Y. Feb. 11, 1993).

7

In addition to citing Conkwright, the district court relied on a decision from the Eastern District of New York, Moorer v. Grumman Aerospace Corp., 964 F. Supp. 665 (E.D.N.Y. 1997), aff'd, No. 97-7790, 1998 WL 640438 (2d Cir. Feb. 27, 1998) (affirming on reasoning of district court). Moorer is one of a handful of district court cases holding that at-will employment contracts cannot serve as predicates for § 1981 claims.**7** The Seventh Circuit, in dicta, also questioned whether "at-will status provide[s] adequate support for [plaintiff's] section 1981 claim." Gonzales, 133 F.3d at 1035.

These contrary cases can be divided into two groups. Cases in the first group simply assume, without extensive analysis, that at-will employment relationships are not "contracts" within the meaning of § 1981. Thus, they hold, discrimination within such relationships cannot give rise to § 1981 claims. E.g., Moorer, 964 F. Supp. at 675-76; Moscowitz, 850 F. Supp. at 1192; Askew, 1991 WL 24390, at *6. Our analysis above explains our disagreement with this group of cases.

Cases in the second group acknowledge that the at-will employment relationship is a type of contract, but conclude that, because at-will employees have no contractual rights to specific terms of employment, they cannot challenge their contractually-permissible terminations under § 1981. E.g., Gonzales, 133 F.3d at 1035; Hawkins, 10 F. Supp. 2d at 553-54. Put differently, these cases presume that, in addition to proving purposeful racial discrimination, a § 1981 plaintiff must prove that the discriminatory act violated a specific contract right. We disagree.

Proving breach of the underlying contract is neither necessary to a successful § 1981 claim, nor, standing alone, sufficient to make out such a claim.**8** An employer may breach a contract for non-

---

**7 E.g.**, Hawkins v. Pepsico Inc., 10 F. Supp. 2d 548 (M.D.N.C. 1998); Moscowitz v. Brown, 850 F. Supp. 1185 (S.D.N.Y. 1994); Askew v. May Merchandising Corp., No. 87 Civ. 7835 (JFK), 1991 WL 24390 (S.D.N.Y. Feb. 20, 1991).

**8** The Supreme Court reached the same conclusion in Patterson, although it did so on the basis of different reasoning. See 491 U.S. at 182-83. But because much of the Supreme Court's analysis was undermined by the 1991 Act, we do not rely on Patterson for this portion of the opinion.

8

discriminatory reasons; this, of course, would not give rise to a § 1981 claim. Conversely, an employer may act in perfect accord with its contractual rights--for example, when it terminates an at-will employee--but it may still violate § 1981 if that action is racially discriminatory and affects one of the contractual aspects listed in § 1981(b). The Fifth Circuit emphasized this point in Fadeyi: "[E]ven though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause." 160 F.3d at 1051-52.

B.

In this case, Spriggs has alleged facts that, if true, indicate that he entered into an at-will employment contract with Diamond. He also alleges that purposeful, racially discriminatory actions by Diamond personnel were so severe that they caused a "discriminatory and retaliatory forced termination" of his employment. J.A. 20. Section 1981(b) specifically includes "termination of contracts" as an aspect of making and enforcing contracts that is protected by § 1981(a). As a result, Spriggs's complaint states a claim under 42 U.S.C. § 1981.

III.

Because the district court erred in dismissing Spriggs's § 1981 claim, we reverse its dismissal and remand this case for further proceedings.

REVERSED AND REMANDED

9