**Brenda CURTIS and Alvin Williamson, Plaintiffs,**

v.

**Richard DIMAIO, James Captain, Noel Murphy and Susan Ravkin, Defendants.**

No. 98–CV–5093(ILG).

United States District Court, E.D. New York.

April 15, 1999.

Stephen T. Mitchell, New York City, for plaintiffs.

Andrew N. Krinsky, Richard S. Ciacci, Healy & Baillie, LLP, New York City, for Richard DiMaio, plaintiff.

Bettina B. Plevan, Proskauer Rose LLP, New York City, for James Captain, defendant.

Stephen E. Tisman, Shiff & Tisman, New York City, for Noel Murphy, Susan Ravkin, defendants.

## MEMORANDUM & ORDER

GLASSER, District Judge.

The plaintiffs, Brenda Curtis ("Curtis") and Alvin Williamson ("Williamson"), former at-will employees of Citibank, N.A. ("Citibank"), brought this action alleging that they "were forced to work in a racially hostile environment" because the defendants sent, and one (James Captain) encouraged sending, electronic mail messages ("e-mails") that were allegedly offensive to African–Americans. The plaintiffs are both African–American and assert claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986; New York State Executive Law § 296; and New York City Administrative Code § 8–502. The identical § 1981 and New York State and City claims have also been asserted against Citibank in a suit filed in February 1997 by Curtis and Williamson in the Southern District of New York (the "Southern District Action").

Specifically, the plaintiffs allege that in January 1997 the defendants Richard DiMaio ("DiMaio"), Susan Ravkin ("Ravkin") and Noel Murphy ("Murphy") used Citibank's e-mail system to send e-mails that contained racially offensive messages to several employees. The plaintiffs claim that defendant James Captain ("Captain") had the authority to control the persons who had access to the e-mail system and that he "permitted and encouraged" DiMaio to use this system to send the racially offensive messages.

The defendants now move to dismiss the Complaint on the ground that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiffs have failed to state a claim upon which relief may be granted and on the further ground that the Complaint is duplicative of their prior pending Southern District action. Defendants Murphy and Ravkin have, in the alternative, moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendants have also moved for an order granting their attorneys' fees and costs in connection with this action.

## DISCUSSION

I. *Legal Standard for Summary Judgment*

In response to the defendants' motions, the plaintiffs have presented matters outside the pleadings, including deposition testimony and copies of the e-mails at issue. As such, this Court treats the motions to dismiss of all the defendants as motions for summary judgment. Fed. R.Civ.P. 12(c); *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988) (where matters outside the pleadings are presented in response to a 12(b)(6) motion the court may convert it into one for summary judgment); *see also Majid v. Malone,* 1996 WL 134756, at * 1 (S.D.N.Y.1996) (it is generally accepted that the decision whether to convert a motion to dismiss into one for summary judgment is within the discretion of the district court).

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on such motion. *See Unit-*

ed States v. All Funds, 832 F.Supp. 542, 550–51 (E.D.N.Y.1993).

If the movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.1996).

In this case, the plaintiffs argue that a motion for summary judgement is premature and that more discovery should be permitted. However, "Rule 56(f) requires the opponent of a motion for summary judgment who seeks discovery to file an affidavit explaining: (1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful." *Sage Realty Corp. v. Ins. Co. of North America*, 34 F.3d 124, 128 (2d Cir.1994); *O'Neill v. JC Penney Life Ins. Co.*, 1998 WL 661513 (E.D.N.Y. 1998) (same). Here, the plaintiffs have filed no such affidavit and their papers, which simply "ask that the district court grant to them the opportunity to discover information pertinent to their claims" cannot be construed as meeting the requirements of Rule 56.

Technical adherence to Rule 56 aside, even were this Court to permit the plaintiffs the opportunity to conduct discovery, there is no basis in the record for finding that they could adduce facts that would influence the outcome of the pending summary judgment motion. As discussed, *infra*, the facts that are alleged in the Complaint do not make out a viable claim for relief under the law. *See C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44 (1st Cir.1998) (In response to motion to dismiss, which the court treated as motion for summary judgment, the plaintiffs sought and were denied discovery. The court noted that the plaintiffs failed to "set forth a plausible basis for believing that specified facts ... probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.") (internal quotations and citation omitted).

The undisputed material facts submitted by the defendants Ravkin and Murphy in their statement pursuant to Local Rule 56.1 which are especially significant for this motion are as follows: Neither Ravkin nor Murphy were Curtis' or Williamson's supervisor and neither had authority to hire, fire or evaluate them. On or about January 28, 1997, DiMaio sent two jokes to Ravkin's private e-mail address which could only be accessed by her or someone using her private security password. Ravkin viewed the e-mail in the privacy of her office and except for Murphy, to whom she sent it, showed it to no one else and never authorized, expected or intended it to be seen by anyone other than Murphy. The e-mail to Murphy was sent to his private e-mail address, accessible only by him or by someone using his private security password. He viewed it in the privacy of his office and was asked by Ravkin not to send it to anyone else. Murphy, however, sent the e-mail to ten others, requesting each

shortly after sending it not to send it to anyone else. Murphy neither authorized, expected nor intended the e-mail to be seen by anyone else other than those ten. The message was not left on either Ravkin's or Murphy's computer screen for others to see. Neither Ravkin nor Murphy intended that Curtis, Williamson or anyone else would be offended by the e-mail message.

Plaintiffs failed to submit opposing affidavits and a statement of material facts in dispute as required under Local Rule 56.1. As such, the facts contained in the defendants' Rule 56.1 Statement will be deemed admitted. *See Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984).

## II. *Section 1981 Claim*

42 U.S.C. § 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

\*    \*    \*    \*    \*    \*.

## A. *The Contract Requirement*

Initially, this Court must determine whether § 1981 applies to at-will employees. While courts agree that a contractual relationship is a prerequisite to maintaining a cause of action under § 1981, *see,*

*e.g., Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 995 (2d Cir.1988); *Krulik v. Board of Educ. of City of New York,* 781 F.2d 15, 23 (2d Cir.1986), there is no consensus as to whether an at-will employee has a contractual relationship sufficient to support such a claim. Many courts have held that because an at-will employee does not have a "contract" she cannot maintain a § 1981 claim. *See, e.g., Bascomb v. Smith Barney Inc.,* 1999 WL 20853 (S.D.N.Y.1999) (at-will employee cannot sustain racial discrimination claims against ·defendants under § 1981); *Simpson v. Vacco,* 1998 WL 118155, at \* 7 (S.D.N.Y.1998) (because an employment contract was not entered into, plaintiff was an at-will employee and precluded from stating a § 1981 claim); *Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 675 (E.D.N.Y.1997) ("[b]y its very terms, § 1981 governs contractual relationships"), *aff'd,* 162 F.3d 1148 (2d Cir.1998); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1192 (S.D.N.Y.1994) (plaintiff's § 1981 claim dismissed for lack of a contractual relationship with the defendant); *Askew v. May Merchandising Corp.,* 1991 WL 24390, at \*6 (S.D.N.Y.1991) (Section 1981 claims dismissed because of plaintiff's failure to establish contractual relationship). However, other courts have found that the absence of a written contract does not preclude finding the existence of a "contractual relationship" between an at-will employee and his employer for the purposes of § 1981. *See, e.g., Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998) ("at-will employees have ... contract, in the broader legal sense of that term"); *Larmore v. RCP/JAS, Inc.,* 1998 WL 372647, at \*2 (E.D.Pa.1998) ("[T]he termination for racially discriminatory reasons even of an otherwise terminable at-will implied-in-fact contract may be actionable under 42 U.S.C. § 1981.") (citation omitted); *Baker v. American Juice, Inc.,* 870 F.Supp. 878, 883 (N.D.Ind.1994) (recognizing that at-will employees do have some contract rights); *Harris v. New*

*York Times,* 1993 WL 42773, at * 4 (S.D.N.Y.1993) (finding that rendition of services in exchange for the payment of wages is sufficiently contractual in nature to satisfy § 1981).

Under New York law, at-will employees have certain contract rights. *See Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir.1996) (citing *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 851–52 (2d Cir.1985) (discussing contractual principles underlying New York's at will doctrine)); *see also Haddle v. Garrison,* —— U.S. ——, ——, 119 S.Ct. 489, 492, 142 L.Ed.2d 502 (1998)[1] ("The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.") (citing *Truax v. Raich,* 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915)); *Mansour v. Abrams,* 120 A.D.2d 933, 502 N.Y.S.2d 877 (4th Dep't 1986) (in certain situations, at-will employees have right to maintain action for tortious interference with contract); *Agugliaro v. Brooks Bros., Inc.,* 802 F.Supp. 956, 963 (S.D.N.Y.1992) (at-will employee who was terminated for illegal reason may maintain action). For example, although an at-will employee could not file a breach of contract claim for being fired, she certainly could file a breach of contract claim if she was not paid the correct salary. *See Lane,* 13 F.Supp.2d at 1272.

The two most recent Court of Appeals decisions to squarely address this issue and which this Court finds persuasive held

that at-will employees do have a contractual relationship sufficient to sue under § 1981. In *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015 (4th Cir.1999), the Fourth Circuit explained:

> We have seen no indication that, when drafting the original § 1981 or the amending 1991 Act, Congress intended the term "contract" to have any meaning other than its ordinary one. *See Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998) (" 'Contract' is used in § 1981 in its basic legal meaning...."). Having concluded that an at-will employment relationship is contractual, we hold that such relationships may therefore serve as predicate contracts for § 1981 claims.

165 F.3d at 1018. In *Fadeyi v. Planned Parenthood Ass'n. of Lubbock, Inc.,* 160 F.3d 1048 (5th Cir.1998), the Fifth Circuit reached the same conclusion, writing:

> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws.

160 F.3d at 1052 (internal quotation and citation omitted).

Both the Fourth and Fifth Circuit decisions were based, in part, on finding that the relevant state law supported the con-

---

1. In holding that the petitioner may maintain an action pursuant to 42 U.S.C. § 1985(2) for interference with his at-will employment relationship, the Court wrote that the "kind of interference with at-will employment relations alleged here is merely a species of the traditional torts of intentional interference with contractual relations and intentional interference with prospective contractual relations." 119 S.Ct. at 492. Cited favorably in

this regard was *Georgia Power Co. v. Busbin,* 242 Ga. 612, 613, 250 S.E.2d 442, 444 (1978) ("[E]ven though a person's employment contract is at will, he has a valuable contract right which may not be unlawfully interfered with by a third person."). That an at-will employment implicates contract rights may confidently be deduced from the decision in *Haddle.*

tractual nature of an at-will employment relationship. *See Spriggs,* 165 F.3d at 1018 ("Maryland courts recognize that at-will employment relationships are contracts ..."); *Fadeyi,* 160 F.3d at 1050 ("Texas law firmly supports the contractual nature of an at-will employment relationship ..."); *but see Jones v. Becker Group of O'Fallon Div.,* 38 F.Supp.2d 793 (E.D.Mo.1999) (rejecting *Spriggs* and *Fadeyi,* in part, because Missouri law dictates that an at-will employee does not have contractual rights with her employer).

■ Cases that have found a contract necessary to maintain a § 1981 action have most often done so in the context of evaluating a claim for wrongful termination. *See, e.g., Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1034–35 (7th Cir.1998). Here, by contrast, the claim is for hostile work environment. The distinction was finely drawn in *Lane, supra,* in which the defendant asserted that plaintiff could not bring a § 1981 claim because she was an at-will employee, bottomed upon the theory that § 1981 applied to contracts and as an at-will employee the plaintiff did not have one. The court wrote, rejecting *Moorer v. Grumman Aerospace Corp., supra* and *Moscowitz v. Brown, supra,* as follows:

> Despite the holdings of these other courts, this district court considers this argument to be without merit. The court believes that Defendant has confused the issue of whether the employee has a "contract" in the sense used in labor law—i.e., employment for an agreed duration, with certain benefits and protections—with the issue of whether there is a contract between an employer and an at-will employee at all. Even at-will employees have some sort of contract, in the broader legal sense of that term, with their employer. Even though the at-will employee could not file a breach of contract claim for being fired (since he has no protections), the at-will employee would be able to file a breach of contract claim if, for example, he was not paid the correct amount. "Contract" is used in § 1981 in its basic legal meaning, not a specialized labor law meaning. This argument is, therefore, without merit.

*Lane,* 13 F.Supp.2d at 1272.

The Seventh Circuit recently addressed this issue, finding that under Illinois law, an employer-employee relationship without an explicit durational term is presumed to be an at-will relationship and that although at-will employment "may end abruptly ... it is a real and continuing contract nonetheless...." *Ingersoll Mill. Mach. Co.,* 133 F.3d at 1034–35(citing *McKnight v. General Motors Corp.,* 908 F.2d 104, 109 (7th Cir.1990) (Posner, C.J.)). From this premise, the court reasoned:

> ... the extent of the employment at-will contractual relationship discussed by Chief Judge Posner in McKnight covered "wages, benefits, duties, working conditions" and all other terms but one, the term of "employment." Arguably, since the [plaintiff here] was an employee at-will, and did not have any contractual rights regarding the term of her employment, she cannot claim that she was discriminated against with respect to [the defendant's layoff].

133 F.3d at 1035 (internal citation omitted).

Here, because the plaintiffs have brought their claim based on the conditions of their employment, and not because they were terminated, their claim implicates a contract right that supports their § 1981 claim.

### B. *Hostile Work Environment*

■ Having established that the plaintiffs may bring a § 1981 claim, the merits of their complaint must now be addressed. To assert a claim for hostile work environment, a plaintiff must allege that he or she (1) is a member of a protected class; (2) was subjected to harassment that had the effect of unreasonably interfering with his or her work performance or creating an

intimidating, hostile, or offensive work environment, and (3) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Briones v. Runyon,* 101 F.3d 287, 291–92 (2d Cir.1996). In addition, the offensive conduct must be severe and cannot consist of isolated or trivial remarks and incidents. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995). More recently, the Second Circuit held that:

> [f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs.

*Schwapp v. Town of Avon,* 118 F.3d 106, 110–11 (2d Cir.1997) (internal quotations and citations omitted).

In this case, there is no dispute that the plaintiffs, as African–Americans, are members of a protected class. However, the plaintiffs' claim fails because they are unable to demonstrate that their workplace was "permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions" of their work environment. Nor are they able to demonstrate a specific basis for imputing such conduct to the employer or that the employer countenanced such conduct at all. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir.1996). Whether such an environment exists is a question of law. *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir. 1999).

Here, the allegations of hostile work environment stem from the following incident.[2] On January 28, 1997, Ravkin, who worked in New York City, sent Murphy,

who worked in Delaware, an e-mail containing two jokes. The first joke was a "Polish" joke—its attempt at humor was premised on the false assumption that people of Polish origin have low intelligence. The second was a joke about Ebonics—a term used for a certain usage of English spoken allegedly by some African–Americans. The humor in this joke was supposed to come from the misuse of English words in a variety of sentences. When Murphy received this e-mail, he resent it to a number of his colleagues at Citibank, using Citibank's e-mail system. The defendants concede that these jokes were ethnically and racially insensitive.

■ The case law makes clear that the sending of a single offensive e-mail does not create a hostile work environment. In *Owens v. Morgan Stanley & Co., Inc.,* 1997 WL 403454 (S.D.N.Y.1997), Judge Cote dismissed a hostile work environment claim based on the sending of a single insensitive e-mail. In that case, the Court found that "as a matter of law [the sending of a single offensive e-mail], while entirely reprehensible, cannot form the basis for a claim of hostile work environment." *Id.* at *2. In addition, in both *Owens* and this case the e-mails were not directed to the plaintiffs. The Court in *Owens* commented:

> Additionally, I note that the e-mail was not directed at the plaintiffs. While this does not make the incident irrelevant to the plaintiff's claim, *Schwapp,* 118 F.3d at 111–12 (holding that a racist comment made out of plaintiff's presence is still relevant to claim of hostile work environment), it does lend further support to the conclusion that this single incident, standing alone, cannot create a hostile work environment for these plaintiffs.

1997 WL 403454, at *2, n. 4. "Hostile work environment" claims are meant to protect individuals from abuse and trauma that is

**2.** As has already been noted, because plaintiffs failed to submit opposing affidavits and a statement of material facts in dispute as required under Local Rule 56.1, the facts contained in the defendants' Rule 56.1 Statement are deemed admitted. *See Dusanenko, supra.*

severe. They are not intended to promote or enforce civility, gentility or even decency. As such, a claim that "my co-worker is unpleasant" or even that "my co-worker is a racist" without more will not support a claim a for a hostile work environment. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (isolated or sporadic comments do not support a claim of hostile work environment); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2nd Cir.1997) ("utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII") (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (other internal quotations omitted)); *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591 (5th Cir.) (rejecting hostile environment claim asserted by a female police sergeant based upon sexually derogatory comments reflected in ten columns published in a police union newsletter, four of which made reference to the plaintiff, that was distributed on a monthly basis to over 700 union members), *cert. denied,* 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1190 (2d Cir.1987) (holding in a racial harassment case that the incidents must be more than episodic: they must be "sufficiently continuous or concerted to be deemed pervasive"); *Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2d Cir.1986) (stating that a few isolated incidents of racial enmity do not give rise to a Title VII violation); *Abidekun v. New York City Transit Authority,* 1998 WL 296372 (E.D.N.Y. June 4, 1998) (same). Given the clear and unambiguous teaching of the precedent on the issue, the court must conclude, as a matter of law, that on the undisputed facts, a hostile environment was not created.

### III. *The Section 1985 Claim*

Section 1985 provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action....

42 U.S.C. § 1985(3). Section 1985(3) "provides no substantive rights itself" and "may not be invoked to redress violations of Title VII." *Great American Federal Sav. and Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 378, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990). The rule set forth in *Novotny* has been held to bar a § 1985(3) claim predicated upon § 1981 where the § 1981 violation fails "to assert any rights violation apart from employment related discrimination covered *or closely related to that covered by Title VII ....*" *Ladson v. Ulltra East Parking Corp.,* 853 F.Supp. 699 (S.D.N.Y.1994) (emphasis supplied). Thus, given plaintiffs' failure to assert any rights violation apart from employment related discrimination "closely related to that covered by Title VII" their § 1985(3) claims are dismissed.

### IV. *Section 1986 Claim*

Section 1986 provides, in relevant part: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to

the party injured.... But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

An action based on § 1986 must be commenced within one year from its accrual. 42 U.S.C. § 1986. Plaintiffs' allegations concerning the defendants relate to acts that took place "some time prior to March 1997." (Compl.¶¶ 5–8, 10). Plaintiffs did not file this action until August 7, 1998. As such the § 1986 claim is time-barred and dismissed. In addition, because claims under § 1986 can rest only on a predicate claim made out under § 1985, *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 291–92 (2d Cir.1992), and such a claim was not successfully made here, plaintiffs' § 1986 claim is dismissed for this reason as well. *See Ladson*, 853 F.Supp. at 704.

### V. *Duplicative Action*

■ Wholly apart from plaintiffs' failure to state a claim, the Court is urged to dismiss this action in the interests of judicial economy. It is well established that federal district courts possess the power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Accordingly, a federal court may dismiss a suit "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court" or in the same federal court. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D.Ill. 1983)).

■■ District courts "are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Id.* (quoting *Ridge Gold Standard Liquor*, 572 F.Supp. at 1213). Instructive in this regard is the hoary case of *The Haytian Republic*, 154 U.S. 118, 123, 14 S.Ct. 992, 38 L.Ed. 930 (1894) in which the Court wrote:

The elementary principle which governs the availability of the plea of "other suit pending" was thus stated in *Watson v. Jones*, [80 U.S. 679,] 13 Wall. 679, 715, [20 L.Ed. 666]: "There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same."

Tested by that principle, the suit pending in the Southern District of New York against Citibank, brought by the same plaintiffs asserting the same rights, praying for the same relief which is founded upon the same facts, makes available to the defendants the "plea of 'other suit pending.'"

■ It is nonfatal to that plea that the parties are not identical. They need not be if their interests are aligned. *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 664 (S.D.N.Y.1997) (finding an action duplicative where it asserted "virtually identical" claims as those in the original action against the company even though the later lawsuit named additional individual defendants); *see also Fiore v. McDonald's Corp.*, 1996 WL 331090 (E.D.N.Y.1996) (dismissing "substantially identical" complaint as duplicative where plaintiffs filed subsequent action to take advantage of New York's statute of limitations period for contract claims). That their interests are aligned is made manifest by the obvious fact that the liability of Citibank can only be predicated upon a finding of wrongdoing by its employees, the individual defendants here. The evi-

dence necessary to prove the action against Citibank is the same evidence that would prove this action. *See The Haytian Republic, supra,* at 125, 14 S.Ct. 992.

■ It is important to note that the plaintiffs belatedly sought to amend their Complaint to add these defendants in the action against Citibank, *see* Ciacci Aff., Ex. D (letter from plaintiffs to Magistrate Judge Katz dated April 10, 1998 stating, "[w]e wish to add Richard DiMaio as a defendant and we may decide to add additional defendants within the next month"), but were precluded from doing so by Magistrate Judge Katz for the reason that the "dates for adding parties or amending the Complaint has long since passed." *Curtis v. Citibank, N.A.,* 97 CV 1065 (S.D.N.Y. April 28, 1998) at Docket # 39. A plaintiff may not file duplicative complaints "for the purpose of circumventing the rules pertaining to the amendment of complaints...." *Walton v. Eaton Corp.,* 563 F.2d 66, 71 (3rd Cir.1977); *see also Oliney v. Gardner,* 771 F.2d 856 (5th Cir.1985) (same); *In re Prudential Securities Inc. Ltd. Partnerships Litig.,* 158 F.R.D. 562 (S.D.N.Y.1994). In this case, Magistrate Judge Katz's ruling with regard to the addition of parties may be said to be circumvented by the filing of the present action. Further, by commencing this action, in this district, the plaintiffs seek to prosecute their demand piecemeal and if this practice were permitted, "there would be no end to litigation." *The Haytian Republic, supra,* at 125, 14 S.Ct. 992. Accordingly, the defendants' motions for summary judgment are granted for these reasons as well.

VI. *State and Constitutional Law Claims*

This Court declines to exercise its supplemental jurisdiction and dismisses the plaintiffs' state and local law claims from this forum. *See In re Merrill Lynch Ltd. Partnerships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) ("This Court and the Supreme Court have held that when the federal claims are dismissed the 'state claims should be dismissed as well.' ") (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (other citation omitted)).

The defendants Murphy and Ravkin advance constitutional bases for granting summary judgment which could not be ignored were it not for the well settled principle that the constitutionality of a statute should not be addressed if the case can be decided on other grounds. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (it is "a fundamental rule of judicial restraint" that "[p]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision" (internal quotations omitted)); *Montilla v. I.N.S.,* 926 F.2d 162, 168–69 (2d Cir.1991) (same). Accordingly, because this case may be disposed of on non-constitutional grounds, the defendants' constitutional arguments are not addressed.

VII. *Costs and Fees*

■ The defendants have also urged this Court to award them their costs and attorneys' fees incurred in defending this action. This Court has the power to award such fees in the interests of justice. *Zim Israel Navigation Co., Ltd v. 3–D Imports,* 29 F.Supp.2d 186, 194 (S.D.N.Y. 1998). The "American Rule" is that the prevailing party in federal court litigation cannot recover attorneys' fees unless his opponent has "commenced or conducted an action in 'bad faith, vexatiously, wantonly or for oppressive reasons.' " *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir.1986) (citing *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). "The appropriate focus for the court in applying the bad-faith" exception to the American Rule is the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by,

for example, ... its willful violations of court orders." *Id.* at 345.

The ruling by Magistrate Judge Katz precluding the plaintiffs from amending their Complaint was issued in another proceeding and may arguably be said not to have preclusive effect here, thus mitigating a consideration of bad faith. Although the request for counsel fees and costs is denied, given the unanimity of authority for the principle that an isolated incident does not create a hostile work environment, counsel would be well advised to assess the possibility of sanctions pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927 in the future.

### CONCLUSION

For the foregoing reasons, summary judgment is awarded to the defendants.

**SO ORDERED.**