Dr. Patricia MISSICK, Plaintiff,

v.

CITY OF NEW YORK, New York City Department of Education, Debra Buszko and Jill Leakey–Eisenberg, Defendants.

No. 07–CV–1494 (RRM)(VPP).

United States District Court, E.D. New York.

March 22, 2010.

---

Alan E. Wolin, Wolin & Wolin, Esqs., Jericho, NY, for Plaintiff.

Camille Danielle Barnett, New York City Law Department—Office of the Corporation COU, New York, NY, for Defendants.

---

*MEMORANDUM & ORDER*

MAUSKOPF, District Judge.

New York City teacher Patricia Missick sues the City of New York, the New York City Department of Education (the "DOE"), P.S. 21 Principal Debra Buszko, and P.S. 21 Assistant Principal Jill Leakey–Eisenberg (collectively "Defendants") asserting various civil rights causes of actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the New York State Human Rights Law, New York Executive Law § 296 and § 297 ("NYHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8–107 ("NYCHRL"). For the reasons below, Defendants' motion for summary judgment is GRANTED and Missick's claims are DISMISSED in their entirety.

**BACKGROUND FACTS**

Missick, a black female over 40 years of age (b. 1950), had been an employee of the DOE as a tenured teacher for over thirty years with documented satisfactory performance at various other public schools in the New York City area. She has several degrees in higher education, including a Ph.D. from New York University School of Education, as well as various Master's degrees. Beginning in the 2004–05 academic school year, Missick received an integration transfer to P.S. 21 (the "School") in Queens,[1] where defendants Debra Buszko and Jill Leakey–Eisenberg served respectively as acting principal and assistant principal. Both Buszko and Leakey–Eisenberg identify as Caucasian females. During the relevant timeframe, Buszko was over 40 years of age (b. 1953), while Leaky–Eisenberg was not (b. 1970).

**I.**

**Missick's Allegations of Discriminatory Conduct**

*A. 2004–05 School Year*

For her initial P.S. 21 assignment, Missick was assigned to teach "Music and Movement" to the School's young children. For her year-end review, Buszko rated Missick's teaching performance as "Satisfactory," and there is no complaint of discrimination in connection with that review. However, Missick does attribute discriminatory motive to Buszko's alleged failure to adequately recommend her to the DOE's Aspiring Principals Program. Buszko's recommendation of Missick states merely that she had supervised Missick for only a few months and could not

---

1. Missick contends that integration transfers are used to ensure that a school's demographics reflect ethnic, racial, and gender balance. Her position, which this Court accepts for summary judgment purposes, is that her P.S. 21 transfer was a response to the School's allegedly low number of black pedagogical employees.

accurately assess her suitability for the Program.

### B. 2005–06 School Year

#### i. Re–Assignment

For the 2005–06 school year, the teachers' union voted to discontinue the Music and Movement program.[2] Consequently, Buszko reassigned Missick to teach Sixth Grade. In doing so, Missick complains that Buszko failed to honor Missick's stated preference to teach younger children. That refusal is further alleged to be a departure from Buszko's customary practice, and treatment disparate from that experienced by other teachers.

#### ii. Medical Complaints

Missick states that she was less inclined to teach older children in light of her physical limitations, which included hypertension and cardiovascular disease. It is Missick's further contention that those physical conditions were rendered more acute when aggravated by stress; the implication being that, in Missick's subjective view, teaching Sixth Grade was more stressful than both her previous position and more stressful than the alternative position she requested.

Missick alleges that in October 2005, she made a request to change her assigned classroom to a lower floor in order to accommodate her physical disabilities. She claims that although P.S. 21 had several elevators, they were often out of service for extended periods. Missick complains that despite her request, her classroom assignment was not changed; Missick does concede, however, that she did not file the available, DOE-approved "request for accommodation" forms.

#### iii. 2005–06 Performance Evaluations

Missick disputes the validity of certain negative performance evaluations tendered during the 2005–06 academic school year. Chiefly, she complains that she was subjected to observation and evaluation more frequently than other P.S. 21 teachers; that each "unsatisfactory" rating issued in connection with those observations was false; and that the evaluation process, as applied to her, suffered procedural defects and irregularities suggestive of pretext.

With respect to defendant Buszko, Missick challenges a purportedly informal October 12, 2005 observation and a formal October 31, 2005 observation. As to the former, Missick complains that Buszko's filing of a written evaluation letter effectively and unfairly transformed an informal observation into a formal one, without benefit of certain procedural protections afforded by DOE and teachers' union policies: namely, advance notice and a pre-observation conference. Accordingly, Missick grieved that evaluation, seeking removal of Buszko's letter from her file. At a grievance conference held November 17, 2005, the parties agreed to removal of the letter in exchange for Missick's promise to attend ten teaching workshops, all of which were scheduled during her lunch break, an agreement to which Missick now contends she was strong-armed. Additionally, Missick challenges her October 31, 2005 "unsatisfactory" evaluation rating as false, and again objects to Buszko's undisputed failure to conduct a pre-observation conference as contemplated by applicable evaluation policy.

Missick further claims that the observations and evaluations conducted on May 18, 2006 and June 20, 2006, both of which

---

**2.** Missick does not dispute the claim that the Music and Movement program was terminated as a result of action taken by the United Federation of Teachers, and not by P.S. 21 administrators.

resulted in "unsatisfactory" ratings, were equally false, procedurally defective and discriminatory. These evaluations were conducted not by defendants Buszko or Leakey–Eisenberg, but rather by non-P.S. 21 administrators Yvonne Gardener and Betsey Malesardi, each of whom shared Missick's protected class status with respect to age, and, in Gardner's case, with respect to race as well.

Finally, Missick challenges a June 2006 annual evaluation, which rated her overall performance for the 2005–06 academic year as "unsatisfactory." Claiming discriminatory bias in connection with each of the evaluations described above, Missick identifies circumstantial evidence of discriminatory intent by P.S. 21's administration, including the fact that, including Missick, P.S. 21's teaching staff included only five African–Americans out of approximately 120 pedagogical employees; that no other African–American employees joined the staff after September 2004; that Buszko rated only one other employee as "unsatisfactory," and that that other employee—whom Missick does not identify by name—was also over 40 years of age.

### C. *Discrimination Complaint*

On April 7, 2006, Missick filed a complaint of discrimination with the City of New York Commission on Human Rights. Plaintiff alleged harassment and discrimination based on race, age, color, and disability based on her negative evaluations, write-ups and refusal of an alleged request for accommodation.

### D. *The 2006–07 School Year*

Missick alleges that Defendants' harassing conduct continued into the 2006–07 school year. Again, Missick challenges the validity of unsatisfactory performance reviews issued on November 9, 2006, January 25, 2007, and June 18, 2007. Missick's discrimination complaints also include claims that Defendants deliberately embarrassed her by publicly summoning her to meetings over the school's public address system; forced her to meet with administrators during her own prep time; harassed and intimidated her into meeting with math and literacy teaching coaches during her lunch periods (coaches whose assistance she claims was unnecessary); and disparately singling her out for criticism and/or discipline in connection with grading and report card errors, poor attendance, and solicitation of recommendations, despite failing to discipline others for similar failings.

For the 2006–07 school year, Missick received an "Unsatisfactory" annual rating, which she did not appeal. Upon returning to the school in August 2007, Missick was reassigned to the DOE's regional offices, receiving her full salary, while waiting for adjudication of disciplinary charges concerning her poor work performance. In November 2007, disciplinary charges were served against her pursuant to Education Law § 3020–a alleging incompetence, insubordination, conduct unbecoming her position or conduct prejudicial to the good order, efficiency or discipline of services, and neglect of duty for the 2005–06 and 2006–07 school years.

### II.

### DOE's Proffered Basis for Adverse Action

#### A. *Teaching Performance*

It is Defendants' view that Missick suffered from unsatisfactory teaching performance in both the 2005–06 and 2006–07 school years. Here, it is undisputed that four different DOE administrators conducted seven different observations, each of which concluded that Missick failed, among other things, to establish a clear

lesson plan or to actively involve her students. Defendants contend that Missick's poor teaching performance did not improve despite her being provided remedial resources and opportunities. On this point, the record reflects the opinions of various evaluators that, notwithstanding numerous opportunities to meet with P.S. 21 administrators and teaching coaches, Missick failed to effectively implement proffered teaching advice and teaching methods, and that Missick otherwise failed to address the pedagogical deficiencies cited in previous subpar evaluations. On this basis alone, Defendants maintain, disciplinary action was well-justified and rendered without bias or discriminatory motivation.

Concerning Missick's claims of procedural defects in the observation/evaluation process, Defendants maintain that that process was implemented properly. Although Defendants concede that a number of Missick's observations were conducted informally, they highlight Missick's failure on summary judgment to identify any rule or regulation prohibiting the use of informal observations. Second, as the record indicates, Missick availed herself of union grievance procedures to independently challenge evaluation procedures; each challenge being rejected by non-party DOE officials. Finally, Defendants suggest that discriminatory intent is belied by independent observation and evaluation by various DOE administrators, some of whom shared Missick's protected class status, and each of whom rated Missick's teaching performance similarly unsatisfactory.

As to claims of disparate treatment in the evaluation process, Defendants note that Missick fails to identify similarly situated P.S. 21 faculty who were treated more favorably. To the contrary, Missick does not challenge Defendants contention that at least one other non-black, tenured

teacher was similarly subject to multiple evaluations during a similar period, and who also received "unsatisfactory" or "doubtful" evaluation ratings. Although that non-black teacher, whom Buszko identified as Judy Kislic, was, like Missick, female and over forty, unlike Missick she received an overall "satisfactory" rating the following school year, 2006–07.

## B. Chancellor's Committee Appeal

Although Missick availed herself of grievance procedures to challenge her negative performance reviews, a hearing conducted on November 20, 2006 before the Chancellor's Committee resulted in a eight-page report affirming her "unsatisfactory" rating. In sum, the Chairperson, having reviewed the available documentary evidence, oral presentations, and the examinations of witnesses by Missick's union representative, ultimately concluded that the "unsatisfactory" rating was justified. The Chairperson's report, which is annexed to the summary judgment record, indicates the Chairperson's view that Missick failed to implement proper lesson plans and failed to utilize the extensive teaching resources made available to her.

## C. Unprofessional Conduct

Apart from Missick's allegedly poor teaching performance, Defendants also note other demonstrated instances of unbecoming or unprofessional conduct. It is undisputed, for example, that on October 31, 2005, Missick, her union representative, Buszko, and Assistant Principals Speidel and Leakey–Eisenberg met to discuss deficiencies in Missick's scoring and recording of a diagnostic English Language Arts test ("ELA test"). The record establishes discrepancies in Missick's scoring of each and every ELA exam, which errors required that the exams be re-scored. As a result, Buszko issued a disciplinary letter to Mis-

sick's file. Missick acknowledged that she had, in fact, made these errors, but explained that they were caused by possible stress injuries or from vision-affecting complications with her medication. Defendants also cite Missick's lack of care by citing her failure to submit student grades for certain classes, and her generalized failure to keep accurate attendance records.[3]

In addition to Missick's lack of care, Defendants identify several instances of alleged professional misconduct, including a complaint of physical intimidation made by P.S. 21's teaching coach, Michelle Wolf, a non-party, who complained to administrators that Missick threatened her in a manner requiring Wolf to flee Missick's classroom mid-observation. Wolf further complained that she found it "increasingly difficult to work with [ ] Missick," and that Missick's "behavior [was] erratic and hostile." The record further indicates that DOE administrators admonished Missick's attempt to videotape her class without administrative authorization or parental consent, and soliciting parent signatures on preprinted letters of recommendation for submission to the Aspiring Principals Program.[4] Finally, DOE administrators received additional parental complaints that Missick had made racially-tinged comments to students in connection with the

teacher evaluation process. On this point, Missick admits that she objected to Assistant Principal Gardner's in-class presence, implying to a young student that Gardner was a racial pawn, saying: "part of growing up . . . is understanding that . . . people will try to set you [up] even if you do good. So, Rosa Parks showed us that sometime black people will be set up to destroy a black woman." At a disciplinary conference, Buszko and others admonished Missick both for discussing the evaluation process with her students, and for the nature of the comments made.

### D. Medical Complaints

In support of her ADA claim, Missick asserts that Defendants treated her differently than similarly situated employees on the basis of her diagnosed cardiomyopathy, congenital heart failure, and hypertension. Specifically, she claims that Buszko ignored her verbal requests for accommodation, particularly a classroom reassignment to a lower floor. She also complains of being the only teacher at P.S. 21 forced to undergo a medical exam in the 2005–06 school year. That exam was occasioned by a November 22, 2005 letter from Buszko's to Missick's personnel file, purporting to outline Missick's alleged disabilities and their effects on her teaching performance.

3. On March 15, 2007, Missick, her union representative, and Buszko met to discuss Missick's record keeping and report completion. In a letter detailing the content of the meeting, Buszko noted that Missick's submitted report cards included various inconsistencies, grammatical errors, failure to report grades for certain classes and errors in attendance information. Buszko advised Missick that this was a serious and inappropriate error for an educator to make. Missick disputes these allegations, claiming that she had not received the grades for classes taught to her students by other teachers and that once she had been given proper instruction by school administrators, she had recorded the grades correctly, though she initially admitted to taking rough guesses with respect to student attendance and tardiness statistics. According to Missick, no other teacher who made report card errors received a letter as she did.

4. On January 22, 2007, Buszko again raised the issue of Missick's continued practice of soliciting pre-printed recommendations from her students in exchange for letters that she would provide for her students, conduct for which Missick had previously been admonished. Missick denies that she did anything improper in soliciting those recommendations.

Although Missick filed a grievance to remove the November 22nd letter from her record, her grievance was ultimately denied pursuant to a Grievance Conference Decision, dated December 13, 2005.

Defendants deny any discriminatory motivation for any action taken in connection with Missick's alleged disabilities. First, it is Defendants' position that Buszko was under no obligation to reassign Missick to a lower floor because (a) P.S. 21 was equipped with several elevators, thus accommodating Missick's alleged immobility, and (b) despite her alleged disabilities, Missick admittedly failed to file a formal DOE accommodation request, despite the existence of DOE procedures for doing so. Second, Defendants contend that Missick's ELA grading errors and her claim of medical excuse placed her condition at issue, requiring Defendants to formally investigate and confirm her claims by DOE medical examination. Moreover, Missick availed herself of the opportunity to grieve both the request for examination and Buszko's November 22nd letter, both of which were subsequently upheld in the grievance process. Finally, the DOE medical report dated January 5, 2006, which has been made part of the summary judgment record, indicates a finding that Missick was physically fit to perform her teaching duties.

## SUMMARY JUDGMENT

■ In the summary judgment context, the evidence adduced must be construed in the light most favorable to Missick, as the non-movant. *See, e.g., Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 69 (2d Cir.2001). Summary judgment is appropriate only where there exists no genuine issue of material fact, and the onus to establish the absence of such factual issues falls squarely upon Defendants as the moving parties. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such showing, the onus shifts to Missick to present evidence sufficient to satisfy every element of the claim. In so doing, Missick is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. But in assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in Missick's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In discrimination cases, the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994)). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. *Id.*

## DISCUSSION

A. *The City of New York*

■ As Missick's claims turn exclusively upon the conduct of DOE administrators and employees, the DOE—and not the City of New York—is the appropriate entity against which suit should be brought. As such, Missick's duplicative claims against the City are dismissed. *See* N.Y. Educ. Law § 2590–g(2); *Meder v. City of*

*New York,* No. 06–CV–0504, 2007 WL 2937362, at \*12 (E.D.N.Y. Oct. 9, 2007); *Linder v. City of New York,* 263 F.Supp.2d 585, 590 (E.D.N.Y.2003).

### B. *Time-barred Claims*

■ Pursuant to Title VII, the ADEA and the ADA, a claimant is required to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory or retaliatory act. 42 U.S.C. § 2000e–5(c); 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117. Failure to do so operates as a statute of limitations precluding further relief. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996). As relevant here, Missick's claims of Defendants' misconduct prior to June 11, 2005 are time-barred, specifically precluding Missick's claim that Buszko denied her a recommendation for the Aspiring Principal's Program in 2004. This Court is not persuaded that any recognized exception to the 300–day period applies. But, even if such claims were subject to tolling, determined to be part of an alleged and continuing pattern or practice, or otherwise timely, such claims would fail for the reasons set forth below.

### C. *Race, Color, and Age Discrimination*

■ Missick's Title VII, ADEA, NYSHRL, and NYCHRL disparate treatment claims are each analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 76 (2d Cir.2005); *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 786 N.Y.S.2d 382, 819 N.E.2d 998, 1006 (2004); *Simeone v. County of Suffolk,* 36 A.D.3d 890, 828 N.Y.S.2d 560, 562 (2007). Pursuant to *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case by showing (1) that she is a member of a protected class, (2) that she was qualified for the position in question, (3) that she suffered an adverse employment action, and (4) that the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 215 (2d Cir.2006). The Second Circuit requires little evidence to establish a *prima facie* case: it is enough that the plaintiff experiences an adverse employment action while others outside of her protected class do not. *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001).

■ Once the plaintiff has established the *prima facie* case, the burden then falls upon the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McPherson,* 457 F.3d at 215. The defendant satisfies this burden if the reason given "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Typically, it is not for courts to question the quality or wisdom of the reason, so long as it is not unlawfully discriminatory. *Id.*

■ In order to survive summary judgment once the defendant has produced a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must allege evidence that suggests that it is more likely than not the case that the reasons offered are mere pretext designed to cover up the employer's actual discriminatory intent. *Ferrell v. Leake & Watts Services, Inc.,* 83 Fed.Appx. 342, 346 (2d Cir.2003). The plaintiff does not have to show that the employer's reasons are false nor that they played no role in the deci-

sion; rather, she must show merely that the proffered reasons were not the only reasons and that discriminatory animus was at least one of the motivating factors for the adverse employment action. *Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 203 (2d Cir.1995). Thus, the ultimate burden of persuading the finder of fact that the employer intentionally discriminated lies with the plaintiff at all times during this burden-shifting process. *Holt v. KMI–Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir.1996).

■ Assuming, *arguendo*, that Missick's *prima facie* burden has been satisfied,[5] Defendants have established several legitimate, non-discriminatory reasons for lacked the skills for the position.") (citing *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 265 (E.D.N.Y.1999)) *with Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir.1980) (plaintiff proffered sufficient evidence that she had tailored her master's and doctoral coursework to prepare her for teaching junior high students such that her reassignment from teaching junior high art classes to elementary school art classes rendered her twenty years of experience useless.) To the contrary, Missick complains only that older students caused her an increased degree of stress, but fails to allege precisely how teaching academic subjects to older students required a greater degree of physical stamina than did teaching music and dance to young children. For these reasons, Missick fails to demonstrate that her reassignment constituted an adverse employment action. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639–42 (2d Cir.2000).

Missick's further claims of rude behavior by P.S. 21 personnel and her referral for medical evaluation similarly fail to establish adverse employment actions. *Meder*, 2007 WL 1231626 at *4 (noting that being "yelled at" and subject to other rude behaviors did not amount to adverse employment actions) (quoting *Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 371 (S.D.N.Y.2005)); *Baum v. Rockland County*, 161 Fed.Appx. 62, 64 (2d Cir.2005) (finding referral for DOE medical evaluation not an adverse employment action in absence of evidence of its impact on working conditions); *Brady v. Dammer*, 573 F.Supp.2d 712, 724 (N.D.N.Y.2008) (medical exam); *Bazile v. City of New York*, 215 F.Supp.2d 354, 385–86 (S.D.N.Y.2002) (medical exam). Accordingly, analysis of the relevant adverse actions here is necessarily limited to the consequences flowing from Missick's negative performance evaluations, as well as the disciplinary action taken in connection with Missick's alleged misconduct.

---

5. Although the Court assumes for summary judgment purposes that a *prima facie* case has been demonstrated, it is clear that many of the actions complained are not adverse employment actions sufficient to support a *prima facie* case. For example, excessive scrutiny, without more, does not constitute adverse action, see *Meder v. City of New York*, 2007 WL 1231626, at *4 (E.D.N.Y. Apr. 27, 2007). Similarly, absent materially adverse consequences, mere negative evaluations or even unjustified criticism do not constitute adverse employment actions. *See id.; see also Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir.2004) (citing *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir.2001), abrogated on other grounds by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)) (noting that negative evaluations do not constitute adverse employment actions unless they have an effect on the terms and conditions of employment); *Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, 2006 WL 2583019, at *28, 51 (S.D.N.Y. Sept. 6, 2006) (same).

Missick's other claims of adverse action, including her objection to having been reassigned to teach Sixth Grade, are not recognized as being adverse employment actions. Missick's reassignment, which was occasioned only by the discontinuance of the Music and Movement Program, did not work any material change in Missick's wages, benefits, work-hours, or ability to accrue seniority. *Cf. Barros v. Miller*, 2005 WL 2416109, at *3–4 (D.Conn. Sept. 30, 2005) (reassignment from Third Grade to Fourth Grade not adverse employment action). Moreover, Missick does not allege that the reassignment was beyond her professional capabilities or that it was designed to cause her performance failures. *Compare Carmellino*, 2006 WL 2583019, at *29 ("While plaintiff undoubtedly preferred not to teach a third grade class at a different school, there is no evidence that plaintiff

proffering disciplinary charges against Missick. As described more fully in the factual discourse above, it is uncontroverted that from fall 2005 to spring 2007, Missick's classroom lessons were observed and evaluated no fewer than seven times by four different DOE administrators, each of whom found her job performance unsatisfactory. *Cf. Baluta v. Hicksville Union Free Sch. Dist.*, No. 94–CV–1871, 2000 WL 335770, at *5 (E.D.N.Y. Mar. 15, 2000) (finding that use of multiple evaluators undercuts discriminatory inference); *Ralkin v. N.Y.C. Transit Auth.*, 62 F.Supp.2d 989, 998 (E.D.N.Y.1999) (same). In this regard, it is notable that Missick's evaluators included not only the P.S. 21 Defendants sued here, but outside evaluators as well, including senior DOE administrators within Missick's age-based class, and at least one within her protected racial class. As concerns her 2005–06 evaluations, which evaluations Missick appealed, the findings of poor performance were further sustained after an evidentiary hearing before the DOE's Chancellor's Committee—a three-member board of review. *Cf. Hawana v. City of New York*, 230 F.Supp.2d 518, 528–29 (S.D.N.Y.2002) (recognizing that an independent decision, which is not itself subject to a claim of discrimination, attenuates plaintiff's proof of a causal discriminatory link). Indeed, in connection with that hearing, which included documentary evidence and the cross-examination of witnesses by Missick's union representative, the Committee affirmed Missick's "unsatisfactory rating" and deemed it warranted, particularly in light of Missick's failure to take advantage of the extensive support offered by the administration, *cf. Davis v. Avaya, Inc.*, 295 Fed.Appx. 380, 381 (2d Cir.2008) (failure to improve poor performance despite extensive counseling and training was a non-discriminatory reason for termination). This failing, the Committee

Chairperson noted, was demonstrably evidenced by her subsequent inability to properly grade student assessment exams, which was deemed "a major deficiency," having potentially serious repercussions for students. In sum, the totality of Missick's consistently poor performance alone is facially adequate to justify the adverse employment action taken. *See Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 250 (2d Cir.2005); *see e.g., Baluta*, 2000 WL 335770, at *5 (relying on teacher evaluations to dismiss discrimination claims) (collecting cases).

Beyond any assessment of her teaching abilities, Missick is further alleged to have violated DOE policy on several occasions, thus generating an adequate, independent, and nondiscriminatory ground for disciplinary action. The twenty-four detailed "specifications" for New York Education Law § 3020–a disciplinary action, which are annexed to the summary judgment record, cite, among other things, Missick's attempt to videotape her classroom without parental consent; her active solicitation of and barter for pre-written recommendations; and complaints of Missick's in-classroom racial commentary. Finally, the disciplinary specifications further outline a host of issues concerning Missick's record-keeping, such as her alleged failure to input students' grades for some subjects and adequately record student attendance and tardiness information as required. Although Missick disputes the conclusions drawn from the facts underlying her disciplinary specifications, the proffering of such charges nonetheless supports a legitimate basis for adverse action that need not be reviewed by this Court. *See Seils v. Rochester City School Dist.*, 192 F.Supp.2d 100, 112 (W.D.N.Y.2002) (holding in the teacher discipline context, that "[e]mployers should be free to choose how to discipline their employees without being

subjected to liability merely because the candidates are of a different race"); *see also Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.1985) (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process").

Notwithstanding the individual merits of Missick's negative performance reviews and disciplinary specifications, Missick would have this Court disregard the DOE's proffered nondiscrimination defenses as pretextual, arguing that discriminatory animus is properly inferable from, among other things: her past satisfactory performance, the mere fact that she was subjected to a disparate level of scrutiny, and an allegedly continuous pattern of personal slights and demeaning experiences at P.S. 21. Upon a considered review of the record, this Court finds Missick's claim of pretext unsupportable.

 The mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus (see *Baluta*, 2000 WL 335770, at *5; *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 674 (E.D.N.Y.1997)), nor are Missick's complaints of undue scrutiny, which form the heart of her lawsuit, *cf. Johnson v. New York City Bd. of Educ.*, No. 96–CV–4472 (NGG), 2000 WL 1739308, at *8 (E.D.N.Y. Oct. 10, 2000). On this latter point, it is notable that courts have consistently rejected pretext claims premised, as here, upon even relatively intense teacher scrutiny. *See, e.g., Ralkin*, 62 F.Supp.2d at 991–93; *Soleyn v. Bd. of Educ. of the City of New York*, No. 98–Civ–5348 (AGS), 1999 WL 983872, at *1–3 (S.D.N.Y. Oct. 28, 1999); *Castro v. N.Y.C. Bd. of Educ. Pers. Dir.*, No. 96–CV–6314 (MBM), 1998 WL 108004, at *1–4 (S.D.N.Y. Mar. 12, 1998). In *Johnson*, for example, the court likewise determined that administrators' myopic focus upon the allegedly problematic performance of a single teacher did not give rise to a trial-worthy inference of class-based discrimination under either Title VII or the ADEA. *Johnson*, 2000 WL 1739308, at *8. In granting defendants' motion for summary judgment on those claims, which were predicated upon facts nearly identical to those alleged here, the Court stated:

Plaintiff's negative performance evaluations distinguish her from all the other teachers. The overriding inference which results from the facts is that Plaintiff was subjected to an excessively monitored environment not because of her age or race, but because of her inability to perform consistently up to the school's standards. *Accord Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567–68 & n. 3 (2d Cir.2000). It is logical, proper, and natural to infer that the reason for Defendant's heightened scrutiny of Plaintiff's performance is that Defendant was concerned about its students and Plaintiff's ability to teach them satisfactorily, especially in light of Plaintiff's performance problems and her new position teaching students with different learning disabilities at P. 771. In sum, even when taken in a light most favorable to Plaintiff, it is apparent that no rational trier of fact could infer that Defendant's actions through its agents were motivated by any impermissible factor.

*Id.*

 As in *Johnson*, the record here leads to no other conclusion but that Missick's teaching performance was scrutinized solely as the natural result of her new teaching duties (*i.e.*, teaching Sixth Grade), her documented history of poor performance in that role, and the Defendants' obligation to act in students' interest. The record—which is otherwise devoid of the typical hallmarks of imper-

missible animus (*e.g.,* racial or age-based epithets) [6]—does not otherwise contain facts from which Defendants' race or age-based animus may reasonably be inferred. *Cf. id.* To the contrary, as in *Johnson,* it is evident from the record that, in this case, Missick was provided with additional resources and extensive support in an effort to assist her in improving her performance.[7]

■■■ Finally, any argument that pretext is to be inferred by the disparate application of disciplinary specifications is similarly unavailing. In this regard, P.S. 21's demographics during the relevant timeframe undercut Missick's appeal to comparator evidence. *See id.* As Missick herself concedes, out of approximately 120 P.S. 21 teachers (which uncontrovertibly included other females over the age of forty, and no fewer than four other African–Americans at any given time), she alone was the only person against whom Buszko ever recommended disciplinary charges. *Cf. id.* at *8 (dismissing Title VII and ADEA claims, finding that, unlike plaintiff, others within plaintiff's protected class received satisfactory marks, thus establishing that plaintiff was not similarly situated to his proposed comparators and further undercutting any inference of defendant's alleged class-based animus).[8] Taken as true, that fact at best suggests only a measure of personal animosity against Missick—conduct that, while deplorable, is not actionable under the class-based protections afforded by state and federal antidiscrimination law. *See Lee v. Poughkeepsie City School Dist.,* No. 06–CV–4660 (KMK), 2008 WL 852790, *8 (S.D.N.Y. Mar. 31, 2008); *see also Tappe v. Alliance Capital Mgmt. L.P.,* 177 F.Supp.2d 176, 185 n. 9 (S.D.N.Y.2001) ("[A]n employer can fire an employee for any reason as long as the reason is non-discriminatory even if based on reasons that are 'unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.'") (quoting *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1337 (2d Cir.1997), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Summary judgment on Missick's various disparate treatment claims arising under Title VII, the

---

**6.** Missick's only evidence of Defendants' alleged preoccupation with her protected status stems from Buszko's alleged compliment concerning Missick's youthful appearance; no race-based commentary is alleged. Assuming that Buszko did comment on Missick's youthful appearance, that statement fails to create a triable issue of fact on either the discriminatory motive or pretext questions. *See Carmellino,* 2006 WL 2583019, at *51. (rejecting as insufficient an allegation that defendant ... told [plaintiff] that "she looks good for her age," finding that "[a]t most, these are "isolated and ambiguous" comments from which no reasonable jury could infer discriminatory animus.") (citing *Pasha v. William M. Mercer Consulting, Inc.,* No. 00 Civ.8362 (RWS), 2004 WL 188077, at *5 (S.D.N.Y. Feb. 2, 2004), and *Douglas v. Dist. Council 37 Mun.*

*Employees' Educ. Fund,* 207 F.Supp.2d 282, 291 (S.D.N.Y.2002)).

**7.** On this basis, Missick's related complaints of undue interference by teaching coaches or the intrusion of teaching workshops upon her schedule likewise fail.

**8.** As here, the plaintiff in *Johnson* conceded that she alone was the subject of negative evaluations and that other African–American teachers, as well as teachers over the age of forty (i.e., other persons within plaintiff's protected class) received satisfactory marks. On that basis, the Court concluded that plaintiff failed to establish that he was similarly situated to other teachers and that the adverse actions taken against him thus did not suggest class-based animus. *Johnson,* 2000 WL 1739308 at *8. That reasoning applies with equal force here.

ADEA, and various provisions of New York State and City law is therefore granted.

### D. Disability Discrimination

#### a. The ADA

■■■■■ ADA claims, which also are reviewed under the *McDonnell Douglas* burden-shifting analysis (*see Fall v. N.Y. State United Teachers*, 289 Fed.Appx. 419, 420 (2d Cir.2008)), similarly require plaintiffs to establish a *prima facie* case of discrimination. *See Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir.2008). To establish a *prima facie* disability discrimination case under the ADA, plaintiff must show (1) that her employer is subject to the ADA, (2) that she suffers from a disability within the meaning of the ADA, (3) that she was otherwise qualified to perform her job functions with or without reasonable accommodation, and (4) that she suffered an adverse employment action *because* of her disability. *Id.*

■■■■■ Here, Missick's failure to establish a *prima facie* ADA claim arises most clearly from her inability to demonstrate that she suffers from an ADA-cognizable disability. Specifically, Missick cannot show—as she must—that she suffers from a significant mental or physical impairment that substantially limits one or more major life activities, which activities include: "... functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *See* 29 C.F.R. § 1630.2(i); *Bragdon v. Abbott*, 524 U.S. 624, 658, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Sussle v. Sirina Protection Sys. Corp.*, 269 F.Supp.2d. 285, 298 (S.D.N.Y. 2003). Despite unsupported allegations that her cardiomyopathy, congenital heart failure, and hypertension qualify her as disabled for ADA purposes,[9] a DOE medical examination concluded that Missick was, in fact, fit to teach. More importantly, Missick herself admitted that, while she took certain medications to alleviate her symptoms (which are alleged to include fatigue and shortness of breath), her medical conditions did not limit her ability to perform her teaching duties. At worst, Missick complained that, even under treatment, her medical conditions made it difficult for her to traverse long flights of stairs, thus justifying her ADA accommodation request for a ground floor class-

---

**9.** Missick has failed to submit medical records or physician testimony in admissible form sufficient to support her medical contentions. Her ADA claim fails upon that basis alone. *See Brown v. Principi*, No. 04 Civ. 1232(PAC), 2007 WL 959375, at \*4 (S.D.N.Y. Mar. 29, 2007) ("Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which [she] claims [she] is subject due to [her] condition, [she] cannot establish that [she] is disabled" within the definition of statutes analogous to the ADA) (citation and internal quotations omitted); *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F.Supp.2d 326, 342 (E.D.N.Y.2008); *Addoo v. N.Y.C. Bd. of Educ.*, No. 04–CV–2255, 2006 WL 5838977, at \*8 (E.D.N.Y. Dec. 18, 2006) ("The court notes that [plaintiff] has not prof-

fered any admissible medical evidence in the form of sworn affidavits from medical professionals."); *Sussle*, 269 F.Supp.2d. at 301–05 (employee's failure to substantiate with medical evidence the extent of his limitations precluded him from establishing ADA disability). Here, Missick annexes only a November 16, 2005 physician's note, the discernable portion of which indicates that she suffers from cardiomyopathy and hypertension. The recommendation is that Missick should "not get stressed out;" that she should only "do limited work;" and that she should not "push herself too much." As stated above, notwithstanding the evidentiary deficiencies, Missick's physician's note fails to establish the necessary impairment to a major life activity sufficient to state an ADA claim.

room.[10] Missick's difficulty in climbing stairs without fatiguing, however, even if adequately supported by admissible corroborating evidence (which is not the case here; see, note 9, *supra* ), has consistently been rejected as failing to implicate a major life activity for ADA purposes. *Accord Addoo v. N.Y.C. Bd. of Educ.,* No. 04–CV–2255, 2006 WL 5838977, at *8 (E.D.N.Y. Dec. 18, 2006) (dismissing teacher's ADA claim, finding no limitation to a major life activity merely because one cannot walk long distances or easily traverse a flight of stairs); *Milford,* 2005 WL 195561, at *6; *but cf. Sussle,* 269 F.Supp.2d at 299 (holding that climbing stairs is a major life activity, but dismissing ADA claims for failure to demonstrate a substantial impairment where plaintiff did not allege an inability to climb stairs, but only difficulty in doing so as a result of fatigue brought on by medication) (collecting cases).[11] Thus, because Missick's fatigue-based fails to adequately demonstrate an ADA-covered disability her ADA claim is dismissed.

Finally, to the extent Missick complains that, in contravention of the ADA, Defendants failed to reasonably accommodate her disability, Missick's inability to estab-

lish application of the statute is fatal to that claim as well. *See Sussle,* 269 F.Supp.2d at 312–13 (dismissing failure to accommodate disability claim where, as here, plaintiff cannot first demonstrate that she is an individual with a disability within the meaning of the statute in question).

b. *NYHRL and NYCHRL*

In addition to federal disability claims, Missick similarly alleges Defendants' disability-based disparate treatment, hostile work environment, retaliation, and failure to accommodate in contravention of the NYHRL and the NYCHRL. As an initial matter, and for the reasons discussed both above and below, Missick's failure to demonstrate impermissible animus or retaliatory conduct necessarily strip her state and municipal discrimination and retaliation claims of any traction, and thus require the complete dismissal of her NYHRL and NYCHRL-based disparate treatment, hostile work environment, and retaliation claims. Nonetheless, her state and municipal reasonable accommodation claims present altogether different issues. *See* N.Y. Exec. Law § 296(3)(a); N.Y.C. Admin. Code 8–107(15)(a); *Romanello v. Shi-*

---

**10.** Missick alleges that, as a side-effect of certain medications taken for her cardiomyopathy and hypertension, she suffered from intermittent eye trouble. In the context of this lawsuit, she describes this condition only as a means of explaining her undisputed errors in grading student assessment exams (although the Court notes her failure to describe the exact nature of her eye trouble or how such condition caused her grading errors), and does not allege that this side-effect was ever the basis of her affirmative ADA-based complaints or requests for accommodation. As such, this alleged side-effect is irrelevant to Missick's ADA claim and need not be addressed. But, even assuming the nature and effect of her vision trouble were relevant and adequately set forth, any resulting ADA claim nonetheless fails as such allegations are wholly unsupported by admissible physician's evidence. *See Sussle,* 269 F.Supp.2d at 301–05.

Finally, even if this evidentiary defect were not fatal to her claim, Missick's *prima facie* ADA claim would still fail, as the ADA's protections apply only to permanent or long-term conditions, and not to the type of intermittent, limited duration side-effect complained of here. *See id.* at 312.

**11.** Even if the Court were inclined to adopt the minority view, that climbing stairs constitutes a major life activity within the meaning of the ADA, Missick fails to establish that her fatigue and difficulty in doing so constitutes a *substantial* limitation on that activity. As noted in *Sussle,* the cases holding that mere difficulty in walking or climbing stairs fails to allege a substantial limitation to a major life activity are legion. *See Sussle,* 269 F.Supp.2d at 312 (collecting cases).

seido Cosmetics Amer. Ltd., 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002) ("Both the NYHRL and the NYCHRL make it unlawful for any employer to fail to provide reasonable accommodations to known disabilities of their employees.") (citations omitted).

In order to set out a *prima facie* case of failure to accommodate under the NYHRL or NYCHRL the plaintiff must show that 1) she has a disability as defined by the statutes, 2) her employers had notice of the disability, 3) with reasonable accommodation she could perform the essential functions of her job, and 4) the defendants refused to make reasonable accommodations for her needs. *Mitchell v. Washingtonville Cent. School Distr.*, 190 F.3d 1, 6 (2d Cir.1999). In this regard, Missick's prior failure to establish a cognizable ADA disability, as discussed above, does not necessarily require dismissal of her identical NYHRL or NYCHRL claims. Although the NYHRL and the NYCHRL are subject to the ADA's analytical framework, their respective definitions of disability differ significantly from the ADA—with the NYHRL and the NYCHRL's disability definitions being recognized as far broader. *See Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir.2001); *Sussle*, 269 F.Supp.2d at 316. In this important aspect, state and municipal disability claims are "analytically distinct" from their federal counterpart. *See Epstein v. Kalvin–Miller Intern., Inc.*, 100 F.Supp.2d 222, 229 (S.D.N.Y.2000). As such, Missick's failure to establish that she suffers from a disability within the narrow meaning of the ADA does not necessarily vitiate otherwise identical NYHRL and NYCHRL claims, at least insofar as she alleges her employer's failure to reasonably accommodate her alleged disability. *See Sussle*, 269 F.Supp.2d at 316; *Johns–Davila v. City of New York*, No. 99 Civ.

1885(RMB)(AJP), 2000 WL 1725418, at *12 (S.D.N.Y. Nov. 20, 2000).

Recognizing that Missick may yet establish applicability of either or both the NYHRL or NYCHRL's reasonable-accommodation protections, this Court need not reach the merits of those claims, as they do not implicate federal questions, and are brought here only by virtue of 28 U.S.C. § 1367 supplemental jurisdiction. The Second Circuit has held that "in the absence of any remaining federal claims (dismissal of Missick's remaining federal claims is further discussed below), the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the courts of the State of New York.... [Thus,] the state-law claims should be dismissed so that the state courts can, if so called upon, decide for themselves whatever questions of state law this case may present." *Giordano*, 274 F.3d at 754; *cf. Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *accord Sussle*, 269 F.Supp.2d at 316–17 (declining supplemental jurisdiction over NYHRL and NYCHRL disability discrimination claims upon dismissal of ADA claim). Accordingly, and in light of the dismissal of Missick's remaining federal claims, as further discussed below, this Court declines to exercise supplemental jurisdiction over

Plaintiff's NYHRL and NYCHRL disability-based failure-to-accommodate claims. Those claims are therefore dismissed without prejudice.

### E. *Hostile Work Environment*

■ In addition to discrimination in the terms and conditions of her employment, Missick also asserts hostile work environment claims on the basis of race, color, age, and medical disability. To establish a *prima facie* hostile work environment claim, Missick must, of course, show that she is a member of a protected class, that she suffered what she perceived to be unwelcome harassment, and that measured objectively such conduct was sufficiently severe or pervasive as to alter the conditions of employment and create an abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995); *Disanto v. McGraw–Hill, Inc./Platt's Div.*, No. 97–cv–1090, 1998 WL 474136, at *5 (S.D.N.Y. Aug. 10, 1998). However, Missick also must demonstrate that she suffered such abuse *because* of her membership in a protected class; i.e., she must establish a causal link between an employer's discriminatory animus and the hostile conduct complained of. *See Alfano v. Costello*, 294 F.3d 365, 376 (2d Cir.2002); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001); *Milford v. N.Y.C. Bd. of Health*, Nos. 02–CV–2834(SJF)(LB), 03–CV–2765(SJF)(LB), 2005 WL 195561, at *4 (E.D.N.Y. Jan. 7, 2005).

■ In this case, Missick's hostile work environment claim derives largely from the alleged stress suffered as a result of her employer's intense scrutiny. That claim fails most clearly because such scrutiny, even if determined by a trier of fact to be objectively oppressive, cannot rea-sonably be attributed to impermissible discriminatory motives. Accordingly, Missick necessarily fails to demonstrate the requisite causal link necessary to support her *prima facie* case.

■ Similarly, Missick's allegations of personal slights and consistent rudeness and disrespect by P.S. 21 personnel add no additional strength to her hostile work environment claim. Even if such collateral actions clearly exhibited the hallmarks of impermissible animus (e.g., alleged race, age or disability-based commentary or conduct), which they do not, the conduct Missick describes is insufficiently severe and/or pervasive as to objectively alter the conditions of her employment. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (to prevail on a hostile work environment claim, the complained of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir.1992) (the complained of "incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief"). Thus, although P.S. 21 administrators may have referred to Missick without due regard to her educational titles, curtly summoned her over the intercom, or otherwise acted in a discourteous manner, a pattern of simple discourtesy, without more, has consistently been held insufficient to trigger hostile work environment protections under state or federal law. *See, e.g., Curtis v. DiMaio*, 46 F.Supp.2d 206, 214 (E.D.N.Y.1999). Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency. Thus, a claim that "my co-worker is unpleasant," or even that "my co-worker is a racist," does not,

standing alone, support a claim a for a hostile work environment. *See id.* at 214 (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (isolated or sporadic comments do not support a claim of hostile work environment)). Accordingly, Missick's hostile work environment claims are dismissed.

### F. *Retaliation*

 Regardless of the merits of her principal discrimination claims, Title VII, the ADEA, the ADA, the NYHRL, and the NYCHRL each forbid employers from retaliating against employees who engage in protected activities. *Kessler,* 461 F.3d at 205–06 (addressing Title VII and ADEA retaliation); *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (addressing NYHRL and NYCHRL retaliation); *see also Shepheard v. N.Y.C. Corr. Dep't,* 360 Fed.Appx. 249, 251 (2d Cir.2010) (addressing ADA retaliation). To establish a *prima facie* case of retaliation, plaintiff must show that (1) she participated in a protected activity, (2) that defendant knew of the activity, (3) an adverse employment action took place, and (4) there exists a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2d Cir.2001). As with principal discrimination claims, once a *prima facie* retaliation case has been established, the burden shifts to the defendant who must then assert a non-discriminatory reason for such adverse action. *Kessler,* 461 F.3d at 205–06; *Shepheard,* 360 Fed.Appx. at 251. Where she can do so, the burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Kessler,* 461 F.3d at 205–06; *Shepheard,* 360 Fed.Appx. at 251. As set forth below, Missick's retaliation claims must be dismissed.

First, as discussed at note 5, *supra,* certain of the allegedly retaliatory conduct complained of fails to constitute an adverse employment action sufficient to support a *prima facie* retaliation claim. *See Carmellino,* 2006 WL 2583019, at *57 (dismissing *prima facie* retaliation claim premised upon conduct deemed not to be an adverse employment action within the meaning of relevant antidiscrimination statutes). For example, as neither Defendants' alleged rudeness nor Missick's DOE medical exam constitutes an adverse employment action (see discussion at note 5, *supra; Meder,* 2007 WL 1231626, at *4; *Baum,* 161 Fed. Appx. at 64), dismissal of retaliation claims premised on such conduct is warranted.

Second, subsequent to the filing of her April 2006 discrimination complaint with the New York City Commission on Human Rights, or such other protected activity, the adverse employment actions Missick did suffer—namely, negative performance evaluations resulting in discipline, as well as disciplinary specifications for incompetence, misconduct, or conduct otherwise unbecoming an educator—have adequately been shown to be the product of legitimate nondiscriminatory motivations, as further discussed above.

Finally, Defendants' alleged failure to accommodate her disability subsequent to an ADA, NYHRL, or NYCHRL protected request cannot be bootstrapped into a viable disability retaliation claim. *Cf. Gomez v. Laidlaw Transit, Inc.,* 455 F.Supp.2d 81, 90 (D.Conn.2006) ("To the extent plaintiff claims that defendant's ongoing failure to accommodate her constituted retaliation, this claim is also insufficient as a matter of law. Requesting accommodation inevitably carries the possibility that the employer will not honor the request. If the prospect that an employer might not honor the request would deter a reasonable employee from even making the request, reason-

able employees would not request accommodation. For this reason, a failure to accommodate cannot constitute retaliation for an employee's request for accommodation.")

For the reasons above, Missick's Title VII, ADEA, ADA, NYHRL, and NYCHRL retaliation claims are dismissed.

### CONCLUSION

For the reasons above, Defendants' motion for summary judgment is GRANTED as to (a) Missick's disparate treatment, hostile work environment, and retaliation claims pursuant to Title VII, the ADEA, the NYHRL and the NYCHRL, and (b) the entirety of Missick's ADA-based claims. Those claims are therefore DISMISSED. The Court declines, in its discretion, to exercise 28 U.S.C. § 1367 supplemental jurisdiction over Missick's remaining disability accommodation claims pursuant to either the NYHRL or the NYCHRL. Those claims are therefore DISMISSED without prejudice.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order, and to close the case.

SO ORDERED.